UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------×

MICHELLE ATKINS,

                *Plaintiff,*

      v.

SPOTIFY USA INC. and ERIN KELLY,

                *Defendants.*

-------------------------------------------------------------------------×

**25-CV-10708**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Michelle Atkins, by her attorneys, Young & Ma LLP, complains of Defendants as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff Michelle Atkins ("Plaintiff' or "Ms. Atkins") seeks damages and costs against Defendants Spotify USA Inc. ("Spotify" or the "Company") and Erin Kelly ("Erin")(collectively, "Defendants") for discriminating against and stereotyping her, subjecting her to a hostile work environment, and wrongfully terminating her based on race, disability, and gender; failing to accommodate her; and retaliating against her for exercising her rights, in violation of § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.     Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative White and/or male colleagues that provide similar or the same work and have similar or the same credentials as Plaintiff, and for retaliating against her for exercising her rights, in violation of N.Y. Labor Law § 194.

1

**JURISDICTION AND VENUE**

3.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Section 1981.

4.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and New York Labor Law claims as they are so related to the Section 1981 claims that they form part of the same case or controversy.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

6.      Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

7.      Upon information and belief, at all times relevant hereto, Defendant Spotify USA Inc. was and is a foreign business corporation organized under the laws of the State of Delaware, doing business in New York with offices located at 4 World Trade Center, 150 Greenwich Street, 62nd Floor, New York, NY 10007.

8.      Upon information and belief, Defendant Erin Kelly is an individual residing in New York and works in the New York office of the Company.

**STATEMENT OF MATERIAL FACTS**

9.      Spotify bills itself as the world's most popular audio streaming subscription service with more than 713 million users, including 281 million subscribers in more than 180 markets.  Publicly traded, the Company has over €15 billion in revenue and a market cap of over $127 billion.

10.    Ms. Atkins has extensive accounting experience working at Ernst & Young, Cornerstone Accounting Group LLP, and Verisk Analytics.  At that point around a decade ago, she went to media and tech, working in SFX Entertainment Inc. and Horizon Media Inc. before coming as a manager to Spotify.

11.    Ms. Atkins's job responsibilities at Spotify included review of staffs analysis, journals, account reconciliation, flux analysis and documentation during month-end close to ensure accurate and timely monthly financial close; responding to inquiries from senior management regarding financial results and special reporting requests; coordinating with department side to facilitate music publisher specific audits; reviewing and preparing SOX (Sarbanes-Oxley) analysis for compliance and audits for both internal and external auditor; interpreting and analyzing financial information to recommend or develop efficient use of resources and procedures, provide strategic recommendations, and maintain solutions to business and financial problems; managing accounting contract payments specific terms on behalf of Content Accounting for all publishing deals, liaison with key business partners on policies, processes, and programs, for example, Technical Accounting, Legal, Content, Sales, Sales Operations, FP&A, Billing, AR, Payment, Tax and Financial Reporting; and work closely with IT and key business owners to drive key system initiatives and improvements.

12.    In addition to working closely with Engineering to streamline and automate Spotify processes, Ms. Atkins also reviewed staff content and accountant's payment reconciliations and ensured the issues are communicated both internally and externally; managed the content staff to ensure the timeliness of processing and approvals of all publishing invoices; and worked with each direct report to establish goal and objectives for each year and monitor and advise on the progress

to enhance the professional development of staff.  She had a good relationship with Tom Inett and always received her raises when working with him as a manager in the accounting department.

13.    In 2020, Tom made a list of milestones for Ms. Atkins to complete, which included generally project management for month end close work and automation of the Publishing Payment Process (working with engineers to improve payment reconciliation). Subsequent to this, she met with the Senior Director and CAO regularly on the progress of her team's milestones. During Michelle's time generally and in response to Tom's feedback, she excelled in client audits (coordinating 3+ audits), automating payment reconciliation with the engineers, streamlining payment process, timely deliverables of MEC, succeeded with the KPI tracking and managerial operational package, passed the Internal Control Process with internal audit, created and managed a new payment reconciliation template, and successfully transferred work from the onshore team to the Manila team, saving hours from the onshore team.

14.    In February 2021, Ms. Atkins met with Tom Inett and he said she exceeded expectations and she got a one-time grant but was not promoted because there was "no room in the structure". However, Jason Iacutone (White male) was just promoted in 2020 to Senior manager and it was Plaintiff's comparative time.  There were 3 white males and 3 black female employees who started at the same time.  The 3 men got promoted (including but not limited to Brandon Russo in 2020 and Andrew Embree in 2021) and the Black women did not.  One of the Black women (Kanika Shields) left because she was not paid the same as her counterparts.

15.    In meeting with HR (Lauren McShaine), Ms. Atkins was told she did a great job and was given $40k to stay 4 years (and she just missed this by one year due to her termination).  In this meeting, Plaintiff said she got passed up every year while Jason Iacutone, Brandon Russo, Andrew Embree all got promoted but she and Shauna Sanchez (Black) were not.

16.    Ms. Atkins was part of the Spotify Black diversity program since 2019 and the group discusses low representation and retention of Black employees.    Plaintiff did express discrimination concerns to Horacio Gutierrez and he just said it's not her time and she should work with her manager to be promoted.  After her initial complaints, Ms. Atkins was promoted to Senior Manager in March 2023.  However, she started to struggle with a new manager, Defendant Erin Kelly, in July 2024.

17.    Prior to Defendant Erin's tenure as her supervisor at an offsite conference in December 2022 in Barcelona, Ms. Atkins walked up to her to say, "Hi Erin how are you?" Erin turned her back on Plaintiff and started to talk to an Asian employee, Winston Wu.  Tom Inett left in July 2024.

18.    Defendant Erin's new team was mostly White.  As previously stated, several White males made senior manager.  Jason was previously promoted and after Ms. Atkins complained, then Erin promoted Kevin.    Meanwhile, Plaintiff was training new publishing staff and working with engineers to build a streamlined process to reduce hours in processing Publishing payment, which has been a problem for over 8 years.  Ms. Atkins has asked Erin since November 2024 to review and finalize this new fundamental change, which delayed the progress of not only Plaintiff's team but the Publishing Operations team as well.

19.    Ms. Atkins and the engineers met with Defendant Erin several times for her to sign off on the change, which she deliberately did not, causing business delays.  Unsurprisingly, within not even 3 months of being her supervisor, Erin started to publicly pick on Plaintiff.  Erin claimed Ms. Atkins paid an invoice early in September 2024 but Tom had given approval before he left.  When Plaintiff screenshotted the evidence to HR, Erin said she "doctored" the evidence/screenshot.  This is an accusation that can only happen to a Black woman.

20.     Defendant Erin accused Ms. Atkins's staff of not performing but Erin had disregarded Plaintiff's recommendation by offering a permanent position to someone not good.  Then Erin blamed Ms. Atkins for Sofia Gomez not performing.

21.     Defendant Erin complained Ms. Atkins was not present, but she had documented medical fibromyalgia. Ms. Atkins had informed all colleagues and supervisors of her conditions in 2023 and also submitted several doctor's notes before having her accommodations technically granted in February 2025 although no accommodations were made to adjust her work expectations as a result.  Plaintiff had submitted a note from a HSS doctor, Dr. Elizabeth R. Schulman, who is clearly credible.  The note mentioned that she's been under care for 3 years for Rheumatoid Arthritis and Fibromyalgia.  Ms. Atkins has widespread body pains and fatigue restricting mobility.  Yet Erin accused her of not being vocal in meetings, even though Plaintiff did update the agenda with her topics and did chime in when there were discussions on topic relating to Publishing.  Erin also takes no responsibility for her discriminatory treatment of Ms. Atkins, causing her to limit public commentary to what is necessary to avoid unnecessary attention and criticism.

22.     Ms. Atkins was fired by February 28, 2025, at under a year reporting to Defendant Erin Kelly.

23.     Notably, Ms. Atkins was typecast and treated as a criminal when terminated, being asked to shut off her computer immediately and get away from company property. When Kelsey Reagan, a White woman, was terminated, she was treated respectfully and given an opportunity to wrap up items and said farewell to staff. This is the case with many White employees.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Race Discrimination**
**in Violation of Section 1981**
**(Against All Defendants)**

24.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

25.     Section 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

26.     At all relevant times, Plaintiff was employed by Defendant pursuant to a contractual relationship within the meaning of 42 U.S.C. § 1981.

27.     Plaintiff is a member of a protected racial group (Trinidadian/Black). Defendant, by and through its agents, employees, and/or supervisors, intentionally discriminated against Plaintiff on the basis of race in the making, performance, modification, and termination of Plaintiff's employment contract, and in the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

28.     Specifically, Defendant subjected Plaintiff to disparate treatment as compared to similarly situated employees outside Plaintiff's protected class, including but not limited to: denying Plaintiff promotions and advancement opportunities; paying Plaintiff less than similarly situated white employees; subjecting Plaintiff to heightened scrutiny and discipline; and ultimately terminating Plaintiff's employment on account of race.

29.     As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back

7

pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

30.     Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**SECOND CAUSE OF ACTION**
**Hostile Work Environment in Violation of Section 1981**
**(Against All Defendants)**

31.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

32.     Section 1981 prohibits employers from discriminating against an employee on the basis of race.

33.     Defendants discriminated against Plaintiff by subjecting her to hostile, discriminatory treatment and offensive, racially motivated comments.

34.     As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

35.     Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of Section 1981
### (Against All Defendants)

36.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

37.    Section 1981 prohibits employers from discriminating against an employee on the basis of race.

38.    Defendants unlawfully terminated Plaintiff because of her race.

39.    As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

40.    Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of Section 1981
### (Against All Defendants)

41.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

42.    Section 1981 prohibits employers from retaliating against an employee for making a complaint of racial discrimination.

43.    Plaintiff properly complained to Defendants about racial discriminators' comments and conduct.

44.     Defendants retaliated against Plaintiff by subjecting her to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating her employment.

45.     As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

46.     Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
### Race, Disability, and Gender Discrimination; Failure to Accommodate; and Hostile Work Environment in Violation of NYSHRL
### (Against All Defendants)

47.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

48.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*, and reference is made to the NYSHRL in its entirety.

49.     At all relevant times, the Company was and is Plaintiff's "employer" within the meaning of the NYSHRL.

50.     At all relevant times, Plaintiff was and is an "employee" of Defendants within the meaning of the NYSHRL.

51.     At all relevant times, Defendants were aware of Plaintiff's race, disability, and gender.

10

52.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's race, disability, and gender and failed to accommodate her in the manner described in the Statement of Facts.

53.     Plaintiff was severely limited in her career by Defendants' unlawful conduct due to her race, disability, and gender, and Defendants' failure to accommodate.

54.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

55.     Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

56.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

57.     Plaintiff's damages include, inter alia, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

58.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**SIXTH CAUSE OF ACTION**
**Race, Disability, and Gender Discrimination; Failure to Accommodate;**
**and Hostile Work Environment**
**in Violation of NYCHRL**
**(Against All Defendants)**

59.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

60.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

61.     At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

62.     At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

63.     At all relevant times, Defendants were aware of Plaintiff's race, disability, and gender.

64.     Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's race, disability, and gender, and failed to accommodate her in the manner described in the Statement of Facts.

65.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

66.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

67.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

68.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

69.     As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

70.     Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**SEVENTH CAUSE OF ACTION**
**Violation of the New York State Labor Law § 194**
**(Against all Defendants)**

71.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

72.     Plaintiff is an "employee" of Spotify as defined under N.Y. Lab. Law § 190(2).

73.     Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

74.     Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's race and disability.

75.     Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bona fide factor, but rather is based on Plaintiff's status in protected classes.

76.     The facts supporting unequal pay and terms and conditions of employment are further

outlined in the Statement of Facts.

77.     As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff

is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her

reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three

hundred percent of the total amount of the wages due for Defendants' willful violation.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the**
**NYSHRL and NYCHRL**
**(Against All Defendants)**

78.     Plaintiff hereby realleges and incorporates each and every allegation contained in this

Complaint with the same force as though separately alleged herein.

79.     Defendants violated the NYSHRL and NYCHRL, because they knowingly retaliated

against Plaintiff for objecting to the discrimination she experienced as alleged in the Statement of

Facts above.

80.     Defendants were aware that Plaintiff engaged in the protected activities alleged in the

Statement of Facts above.

81.     Because of her protected activities, Defendants took retaliatory adverse employment

actions against Plaintiff as alleged in the Statement of Facts above.

82.     The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless

indifference to Plaintiff's protected rights.

83.     As a direct and proximate result of the unlawful retaliation by Defendants, Plaintiff has

suffered damage to her career path, adverse job consequences, including economic damages, and

continues to suffer damages, including severe mental, physical and emotional stress, pain and

suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

## JURY DEMAND

84.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendants as follows:

A.    Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated: (i) § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (ii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*; (iii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; (iv) N.Y. Labor Law § 194; and (v) that Defendants' foregoing acts of discrimination, harassment, and retaliation against Plaintiff were intentional and willful.

B.    Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C.    Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest (and adjusted to make Plaintiff whole for any increased tax liability incurred by her receipt of a lump sum payment in a single year);

D.    Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E.    Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.


Dated: New York, New York
       December 26, 2025

                                            Respectfully submitted,


                                    By: _____
                                            Tiffany Ma, Esq.
                                            Young & Ma LLP
                                            445 Park Avenue, 9th Floor
                                            New York, NY 10022
                                            T: (646) 379-7703
                                            F: (888) 839-4306
                                            tma@youngandma.com